EXHIBIT
1

| | |
|---|---|
| 1. Shipbroker<br>STIEGLER SHIPPING CO., INC.<br>1151 HILLCREST ROAD, SUITE F<br>MOBILE, ALABAMA 36695<br>PH: 251-639-7300 FAX: 251-639-7306 | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED [illegible])<br>[illegible]<br>CODE NAME: "GENCON" Part I |
| | 2. Place and date<br>Mobile, Alabama April 27, 2006 |
| 3. Owners/Place of business (Cl. 1)<br>STIEGLER SHIPPING CO., INC.<br>as agents for the owner<br>1151 HILLCREST ROAD, SUITE F<br>MOBILE, ALABAMA 36695<br>PH: 251-639-7300 FAX: 251-639-7306 | 4. Charterers/Place of business (Cl. 1)<br>RADIANCE SHIPPING LINES, LLC<br>1905 Intermodal Circle, Suite 200<br>Port Manatee, Palmetto,<br>Florida 34221<br>Ph: 941-722-1500 |
| 5. Vessel's name (Cl. 1)<br>M/V "ONEGO BREEZE" OR SUB. | 6. GT/NT (Cl. 1)<br>3186/1372 |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)<br>4183 DWAT | 8. Present position (Cl. 1)<br>NEW ORLEANS, LA. |
| 9. Expected ready to load (abt.) (Cl. 1)<br>JUNE 24, 2006 | |
| 10. Loading port or place (Cl. 1)<br>1 SBSA PORT MANATEE, FLORIDA AAAA | 11. Discharging port or place (Cl. 1)<br>1 SBSA PROGRESSO, MEXICO AAAA |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br>[illegible] | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br>MIN. 3 VOYAGES @USD$75000 LUMPSUM FIOS PER VOYAGE WITH ALL PORT EXPENSES FOR ACCOUNT OF CHARTERER/SHIPPER AT ALL PORTS.<br>FREIGHT DEEMED EARNED UPON COMPLETION OF LOADING DWNSAOCLONL | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br>FULLY PREPAID [illegible] ON ARRIVAL PORT MANATEE, BALANCE [illegible] PRIOR TO COMMENCEMENT OF THE VOYAGE VIA WIRE TRANSFER TO STIEGLER SHIPPING CO'S ACCOUNT FOR FURTHER TRANSFER TO OWNER'S NOMINATED ACCOUNT.<br>WACHOVIA BANK, MOBILE, AL ABA [illegible] ACCT [illegible] |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5)<br>GEARED 2 X 25 TONS | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6)<br>RADIANCE SHIPPING LINES, LLC - PORT MANATEE, FL | (a) Laytime for loading<br>1 DAY SATURDAYS, SUNDAYS, HOLIDAYS INCLUDED |
| 18. Agents (loading) (Cl. 6)<br>CHARTERER'S AGENTS - CHARTERERS PAYING CUSTOMARY D/A | (b) Laytime for discharging<br>1 DAY SATURDAYS, SUNDAYS, HOLIDAYS INCLUDED |
| 19. Agents (discharging) (Cl. 6)<br>CHARTERER'S AGENTS - CHARTERERS PAYING CUSTOMARY D/A | (c) Total laytime for loading and discharging |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br>USD$7500 PER DAY PRORATA/ FREE DESPATCH BENDS | 21. Cancelling date (Cl. 9)<br>JUNE 28, 2006 MIDNIGHT |
| | 22. General average to be adjusted at (Cl. 12) |
| 23. Freight Tax (state if for the Owners' account) (Cl. 13 (c)) | 24. Brokerage commission and to whom payable (Cl. 15) |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)<br>Arbitration in Mobile, AL under U.S. & AL law<br>19 (c) | |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19)<br>USD 25000 LUMPSUM | 26. Additional clauses covering special provisions, if agreed<br>ANY EXTRA INSURANCE FOR CHARTERER'S ACCOUNT |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| [signature] | [signature] |

Printed and sold by [illegible] ... by authority of The Baltic and International Maritime Council (BIMCO), Copenhagen

[illegible] (vertical margin text)

## PART II
## "Gencon" Charter (As Revised 1922, 1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that:

The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. **Owners' Responsibility Clause**

The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager.

And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.

3. **Deviation Clause**

The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. **Payment of Freight**

(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo.

(b) Prepaid. If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost. Neither the Owners nor their agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid.

(c) On delivery. If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing machine, joint draft survey or tally.

Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses.

5. **Loading/Discharging**

*(a) Costs/Risks*

The cargo shall be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.

*(b) Cargo Handling Gear*

Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power - pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party - shall not count as laytime or time on demurrage.

On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen/winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.

*(c) Stevedore Damage*

The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.

The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.

6. **Laytime**

* *(a) Separate laytime for loading and discharging*

The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.

The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.

* *(b) Total laytime for loading and discharging*

The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.

*(c) Commencement of laytime (loading and discharging)*

Laytime for loading and discharging shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice given during office hours after 12.00 hours. Notice of readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 19.

If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/discharging berth shall not count as laytime.

If, after inspection, the Vessel is found not to be ready in all respects to load/discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime.

Time used before commencement of laytime shall count.

* Indicate alternative (a) or (b) as agreed, in Box 16.

7. **Demurrage**

Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' invoice.

In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby.

8. **Lien Clause**

The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

9. **Cancelling Clause**

(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers shall have the option of cancelling this Charter Party.

(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.

Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.

The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.

10. **Bills of Lading**

Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. **Both-to-Blame Collision Clause**

If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

12. **General Average and New Jason Clause**

General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).

If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery."

13. **Taxes and Dues Clause**

(a) *On Vessel* -The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.

(b) *On cargo* -The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.

(c) *On freight* -Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterers' account.

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL
UNIFORM GENERAL CHARTER (AS REVISED 1922,1976 and 1994)
(To be used for trades for which no specially approved form is in force)
CODE NAME: "GENCON" Part I

| | |
|---|---|
| 1. Shipbroker<br>STIEGLER SHIPPING CO., INC.<br>1151 HILLCREST ROAD, SUITE F<br>MOBILE, ALABAMA 36695<br>PH: 251-639-7300 FAX: 251-639-7306 | 2. Place and date<br>Mobile, Alabama April 27, 2006 |
| 3. Owners/Place of business (Cl. 1)<br>STIEGLER SHIPPING CO., INC.<br>as agents for the owner<br>1151 HILLCREST ROAD, SUITE F<br>MOBILE, ALABAMA 36695<br>PH: 251-639-7300 FAX: 251-639-7306 | 4. Charterers/Place of business (Cl. 1)<br>RADIANCE SHIPPING LINES, LLC.<br>1905 Intermodal Circle, Suite 200<br>Port Manatee, Palmetto,<br>Florida 34221<br>Ph: 941-722-3500 |
| 5. Vessel's name (Cl. 1)<br>M/V "ONEGO BREEZE" OR SUB. | 6. GT/NT (Cl. 1)<br>3186/1372 |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)<br>4183 DWAT | 8. Present position (Cl. 1)<br>NEW ORLEANS, LA. |
| 9. Expected ready to load (abt.) (Cl. 1)<br>JUNE 24, 2006 | |
| 10. Loading port or place (Cl. 1)<br>1 SBSA PORT MANATEE, FLORIDA AAAA | 11. Discharging port or place (Cl. 1)<br>1 SBSA PROGRESSO, MEXICO AAAA |

12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo" (Cl. 1)
MINIMUM 3 CONSECUTIVE VOYAGES, WITH OWNER'S OPTION TO PERFORM 1 TO 3 ADDITIONAL VOYAGES
FULL OR PART CARGO AT OWNER'S OPTION, EQUIPMENT, MACHINERY, VEHICLES, HARMLESS GENERALS AND SHIPPER OWNED CONTAINERS
(AS PER PACKING LIST PROVIDED BY CHARTERER)
-FREE IN / FREE OUT AND FREE OF ALL PORT EXPENSES TO OWNER AT BOTH LADING/DISCHARGING PORTS
-MASTER IS ALLOWED TO TENDER/CABLE/TELEX NOTICES WIPON/WIBON/WIFPON/WCCON BENDS
-CHARTERER TO PROVIDE PROOF OF PAYMENT OF PORT EXPENSES PRIOR TO VESSEL'S DEPARTURE AT EACH PORT
-ANY TAXES A/O DUES A/O FEES A/O DOCKAGES ETC ON CARGO A/O FREIGHT OR CALC ON SAME OR IMPOSED ON VSL BY REASON OF HAVING CARGO ON BOARD TO BE FOR CHARTERER'S ACCOUNT

| | |
|---|---|
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br>MIN. 3 VOYAGES @USD$75000 LUMPSUM FIOS PER VOYAGE WITH ALL PORT EXPENSES FOR ACCOUNT OF CHARTERER/SHIPPER AT ALL PORTS.<br>FREIGHT DEEMED EARNED UPON COMPLETION OF LOADING DNRSAOCLONL | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br>FULLY PREPAID 60% ($135000) ON ARRIVAL PORT MANATEE, BALANCE ($90000) PRIOR TO COMMENCEMENT OF 3RD VOYAGE VIA WIRE TRANSFER TO STIEGLER SHIPPING CO'S ACCOUNT FOR FURTHER TRANSFER TO OWNER'S NOMINATED ACCOUNT.<br>WACHOVIA BANK, MOBILE, AL ABA#062000080 ACCT NO. 2000019007131 |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5)<br>GEARED 2 X 25 TONS | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)<br>(a) Laytime for loading<br>1 DAY SATURDAYS, SUNDAYS, HOLIDAYS INCLUDED<br>(b) Laytime for discharging<br>1 DAY SATURDAYS, SUNDAYS, HOLIDAYS INCLUDED<br>(c) Total laytime for loading and discharging |
| 17. Shippers/Place of business (Cl. 6)<br>RADIANCE SHIPPING LINES, LLC - PORT MANATEE, FL | |
| 18. Agents (loading) (Cl. 8)<br>CHARTERER'S AGENTS - CHARTERERS PAYING CUSTOMARY D/A | |
| 19. Agents (discharging) (Cl. 8)<br>CHARTERER'S AGENTS - CHARTERERS PAYING CUSTOMARY D/A | 21. Cancelling date (Cl. 9)<br>JUNE 26, 2006 MIDNIGHT |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br>USD$7500 PER DAY PRORATA/ FREE DESPATCH BENDS | 22. General Average to be adjusted at (Cl. 12) |
| 23. Freight Tax (state if for the Owners' account (Cl. 13 (c)) | 24. Brokerage commission and to whom payable (Cl. 15) |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)<br>Arbitration in Mobile, AL under U.S. & AL law<br>19 (c) | |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19)<br>USD $5000 LUMPSUM | 26. Additional clauses covering special provisions, if agreed<br>ANY EXTRA INSURANCE FOR CHARTERER'S ACCOUNT |

Copyright, published by The Baltic and International Maritime Council (BIMCO) Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| [signature] | |

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box5 of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9. and the party mentioned asthe Charterers in Box 4 that:

The said Vessel shall as soon as her prior commitments have been completed proceed to the loading port(s) or places) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment at deck cargo agreed same to be at the Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. Owners' Responsibility Clause

The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.

And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.

3. Deviation Clause

The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots to tow and/or assist Vessels in all situations and also to deviate for the purpose of saving life and/or property.

4. Payment of Freight

(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo.

(b) Prepaid. If according to Box 13 freight is to be paid on shipment it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost. Neither the Owners nor their agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid.

(c) On delivery. If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing machine, joint draft survey or tally.

Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange. subject to two (2) per cent to cover insurance and other expenses.

5. Loading/Discharging

(a) *Costs/Risks*

The cargo shall be brought into the holds loaded stowed and/or trimmed tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk liability and expense whatsoever to the Owners. The Charterers shall Provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.

(b) Cargo Handling Gear

Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power - pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party - shall not count as laytime or time on demurrage.

On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen/winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.

(c) Stevedore Damage

The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores. failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.

The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and anytime lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.

6. Laytime

* *(a) Separate laytime for loading and discharging*

The cargo shall be loaded within the number of running days/hours as indicated in Box 16 weather permitting Sundays and holidays excepted. unless used, in which event time used shall count.

The cargo shall be discharged within the number of running days/hours as indicated in Box 16 weather permitting Sundays and holidays excepted unless used, in which event time used shall count.

*(b) Total laytime for loading and discharging*

The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16 weather permitting Sundays and holidays excepted, unless used, in which event time used shall count.

(c) Commencement of laytime (loading and *discharging*)

Laytime for loading and discharging shall commence at 13.00 hours. If notice of readiness is given up to and including 12.00 hours, and at 06:00 hours next working day if notice given during office hours after 12:00 hours. Notice of readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known to the Charterers or their agents named in Box 19.

If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there whether in free pratique or not whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place at waiting to the loading/discharging berth shall not count as laytime.

If after inspection, the Vessel is found not to be ready in all respects to load/discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime.

Time used before commencement of laytime shall count.

* *Indicate alternative (a) or (b) as agreed, in Box 16*

7. Demurrage

Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' invoice.

In the event the demurrage is not paid in accordance with the above the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby.

8. Lien Clause

The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo for freight, deadfreight, demurrage claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

9. Cancelling Clause

(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21 the Charterers shall have the option of cancelling this Charter Party.

(b) Should the Owners anticipate that, despite the exercise of due diligence the Vessel will not be ready to load by the cancelling date they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.

Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.

The provisions of sub-clause (b) of this Clause shall operate only once and in case of the Vessel's further delay the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.

10. Bills of Lading

Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by Owners to the agents a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. Both-to-Blame Collision Clause

If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners.

The foregoing provisions shall also apply where the owners operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

12. General Average and New Jason Clause

General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2)

If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident danger damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices losses or expenses of a General Average nature that maybe made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall if required be made by the cargo shippers. consignees or owners of the goods to the Owners before delivery"

13. Taxes and Dues Clause

(a) *On Vessel* -The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.

*(b) On cargo* -The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo howsoever the amount thereof may be assessed

*(c) On freight* -Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterer's account.

14. Agency

In every case the Owners shall appoint their own Agent both at the port of loading and the port of discharge.

15. Brokerage

A brokerage commission at the rate stated in Box 24 on the freight dead-freight and demurrage earned is due to the party mentioned in Box 24.

In case of non-execution 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.

16. General Strike Clause

(a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo or any part of it, when the Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

(b) If there is a strike or lock-out affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance to the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

17. War Risks ("Voywar 1993")

(1) For the purpose of this Clause, the words:

(a) The "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all Vessels or imposed selectively against Vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever) by any person, body, terrorist or political group, or the Government of any state whatsoever, which in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be or are likely to be exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(5) The Vessel shall have liberty:-

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;

(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

18. General Ice Clause

Port of loading

(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.

(b) If during loading the Master for fear of the Vessel being frozen in, deems it advisable to leave he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.

(c) In case of more than one loading port and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.

Port of discharge

(a) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles the freight on the cargo delivered at the substituted port to be increased in proportion.

19. Law and Arbitration

* (a) This Charter Party shall be governed by and construed in accordance with U.S. ~~English~~ law and any dispute arising out of this Charter Party shall be referred to arbitration in Mobile AL ~~London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force.~~ Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three-man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final.

For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.

* (b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party the matter in dispute shall be referred to three persons at New York one to be appointed by each of the parties hereto and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.

For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc.

* (c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern this Charter Party.

(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply.

* (a), (b) and (c) are alternatives; indicate alternative agreed in *Box 25*.

** Where no figure is supplied in Box 25 in Part I, this provision only shall be void but the other provisions of this Clause shall have full force and remain in effect.